296 So.2d 183

**OLD SOUTHERN LIFE INSURANCE CO.**

v.

**Annie Laura McCONNELL.**

**Civ. 184.**

Court of Civil Appeals of Alabama.

June 12, 1974.

Patterson & Rinehart, Montgomery, for appellant.

Walker, Hill, Gullage, Adams & Umbach, Opelika, for appellee.

WRIGHT, Presiding Judge.

This is an appeal from verdict and judgment in the amount of $5000 in an action for misrepresentation or fraud.

The action arose out of an application for a policy of life insurance upon the life of plaintiff's husband with plaintiff to be the designated beneficiary thereof.

The count of the complaint which went to the jury generally averred as follows:

That plaintiff's husband applied for a policy of insurance upon his life with the defendant; that with the application be paid a three month premium; that said application was made on April 13, 1971 and plaintiff's husband died on August 13, 1971; that plaintiff's husband submitted to medical examination as required and until his death demanded issuance of the policy; that the policy was never issued, but that defendant represented to plaintiff and her husband that the insurance was in effect and he was covered; that such representation was made to induce the husband not to withdraw the application and secure other insurance; that plaintiff and her husband did rely on the representation and upon the death of the husband plaintiff was damaged in that coverage was denied by defendant.

It is conceded by counsel that there has not been previously before the appellate courts of this state a similar case, that is, a suit for fraud or misrepresentation brought by an applicant for life insurance against the insurance company for falsely representing coverage pending the issuance of the policy. Our research has discovered no such prior case in this state. Neither have we found a case of reasonably similar nature in the appellate reports of any other state, except in the case of Cavallo v. Metropolitan Life Insurance Co. reported in 47 Misc.2d 247, 262 N.Y.S.2d 618.

There have been many cases involving action upon oral contracts of insurance arising from representation of agents of insurance companies as to coverage pending the issuance of a policy. 44 C.J.S. Insurance § 250. Such oral contracts have been recognized in this state. Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; United Ins. Co. of America v. Headrick, 275 Ala. 594, 157 So.2d 19. However, as apparent, such cases have been founded upon the laws of contract and not the law of tort. In this case, as originally instituted, the complaint contained two counts upon a contract of insurance. Neither of such counts alleged a contract of insurance arising from oral representation. Both counts were withdrawn by plaintiff.

The maxim that "out of the facts the law of the case arises" is particularly applicable in this case. We therefore, as briefly as possible, recite the tendencies of the evidence.

On April 13, 1971, appellant, Old Southern Life Insurance Company of Montgomery, had recently acquired the services of one McKinstry as agent in Lee County, Alabama. The contract between appellant and McKinstry was headed "Producer's Life General Agents Contract." However, the body of the contract granted only authority to solicit applications for life insurance, collect first premiums and pay them over to the company. The agency was specifically limited by the provision that it "has no authority to alter, modify, waiver or change any of the terms, rates or conditions of any of the company's policies or contracts."

McKinstry was the son-in-law of plaintiff and her husband when he, on April 13, 1971, solicited and obtained an application from the husband for a policy of ordinary life insurance in the amount of $5000. The testimony was undisputed that McKinstry, after dinner with his in-laws, the McConnells at their home, filled out the application while sitting at the dining table. Each question and part of the application was read by him to the plaintiff and the applicant. They answered the questions and plaintiff paid a premium for three months in the amount of $54.50.

Question #10 of the application included an affirmation of agreement that the insurance applied for shall not be effective until the policy has actually been issued. The receipt for the premium was torn from the bottom of the application and signed by McKinstry. It included the following, "If for any reason the application is not approved and policy issued, this payment is to be refunded. No liability is created or assumed by the company, except for refund of this payment, until the policy applied for has been issued."

Due to applicant's age of 52, a medical examination was required. This was completed and forwarded to the appellant on May 22, 1971. A retail credit report was obtained on April 27, 1971. A supplemental report on May 6.

It was a rule of the appellant that it insured only amounts up to $2500. Additional coverage was obtained through re-insurance agreements with other companies. A request for re-insurance was forwarded to Life & Casualty Insurance Company of Tennessee on May 4, 1971. The medical report and specimen was forwarded to the re-insuror when received by appellant. On May 28, 1971, the re-insuror telegraphed that it would re-insure applicant only at a rate of $5.00 per thousand per year higher than the standard rate for which the applicant had paid.

McKinstry was informed of the re-insuror's decision by Johnson, the underwriter for appellant. McKinstry informed plaintiff and applicant. They rejected the higher rate and requested that other effort be made by appellant to secure re-insurance at the standard rate.

Appellant requested re-insurance from Wabash Life Insurance Company on June 1, 1971. By telephone on the same date, Wabash indicated possible standard rate coverage upon report from the attending physician, Dr. Lazenby, who had performed surgery on applicant in 1968. Request for such report was made by appellant. Dr. Lazenby never responded, though follow up requests were made by letter and telephone. On July 8, 1971, Wabash closed its file for lack of report but indicated it could reopen if requested.

At some time during the period from date of application, applicant and plaintiff inquired of McKinstry when the policy would issue. McKinstry stated he went to Johnson, the underwriter, at the home office of appellant in Montgomery and inquired of progress. He stated Johnson told him not to worry that McConnell was covered. He then told applicant and plaintiff that he had talked to people in the home office and not to worry they were covered. By his testimony he did not disclose to plaintiff the person with whom he talked.

Underwriter Johnson denied that he made such statement to McKinstry. He further stated that he had no authority to issue any policy for the amount of $5000, except $2500 thereof was re-insured, and the rules for rate and insurability had been satisfied. He also stated he had informed McKinstry that he could issue the policy at the higher rate, but McKinstry had informed him that such rate was not acceptable to the applicant and to try for the standard rate with other re-insurors.

Plaintiff stated she had been informed by McKinstry of the higher rate and issuance of a policy at such rate was declined.

On August 13, 1971, applicant died after emergency surgery. Premium was refunded by appellant on August 16, 1971. It was refused. Claim for benefits was refused by appellant. Suit followed.

Appellant in brief does not pursue its assignment of error 1. Therefore such assignment is waived. Supreme Court Rule 9.

Assignment of error 2 challenges the sufficiency of the evidence to establish the material averments of the complaint. It is appellant's contention that the proof failed in two material respects (a) justifi-

able reliance upon a false representation and (b) proof of damages.

Appellant states that plaintiff's case must stand or fall upon the scope of McKinstry's agency and the right of plaintiff to rely upon representation of McKinstry that there was "coverage" though the application for the insurance and the receipt for the first premium stated that there would be no insurance until a policy was issued. Appellant, though stating in brief that plaintiff abandoned all attempts to establish the existence of a contract of insurance, either written or oral, between it and plaintiff's husband, offers much of its argument based upon propositions of law applicable to a cause of action in contract. Such argument is not equally applicable to an action in tort for fraud and deceit. For instance, appellant contends that existence of authority of McKinstry, real or apparent, to make the charged representation to plaintiff was not established by the evidence, and that the failure of McKinstry to identify to plaintiff who in the home office of appellant had stated to him there was coverage, was material.

▬ As we see it, the extent of the authority of McKinstry as an agent to bind appellant in contract is not necessarily conclusive in proof of liability of appellant in tort. The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of "respondeat superior" not the principles of agency. 3 Am.Jur.2d, Agency, § 267. The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents, done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them. Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685; Tollett v. Montgomery Real Estate & Ins. Co. 238 Ala. 617, 193 So. 127; Am.Jur.2d, supra.

We are not directly concerned with the authority of McKinstry or of underwriter Johnson to bind appellant in contract, but whether each was acting within the actual or apparent scope of employment at the time the alleged misrepresentation was made. First, let us point out that the question of whether the charged representation was made by McKinstry is undisputed. He admits telling plaintiff and her husband that they were "covered." The further question whether he was told by underwriter Johnson that there was "coverage" was a matter of conflicting evidence with the fact to be determined therefrom by the jury. It was further for the jury to determine from the evidence whether in making such representation Johnson was acting within the scope of his employment, real or apparent, with appellant. Certainly, it cannot seriously be contended that McKinstry was not within his employment in conveying such representation to plaintiff and her husband. Thus, if the representation came from the mouth of Johnson it was not the representation of McKinstry. McKinstry was merely the means of communication between Johnson and plaintiff. It is not necessary that false representation be made directly to one intended to be deceived. 91 A.L.R. 1364.

The evidence was that Johnson was the underwriter for appellant. He was the issuing authority for all policies of the company. If he told McKinstry there was coverage, the jury could find that he was acting within the line and scope of his employment. Whether Johnson in fact possessed such authority would not prevent appellant from becoming liable in tort for his falsely so stating. The issue of Johnson's authority, real or apparent, was placed before the jury by appellant's given requested charge 13. The jury decided against appellant.

After determining that a false representation was in fact made by an agent or employee of appellant while acting within the scope of his employment, and that such representation was conveyed to plaintiff

with the purpose of inducing action or non-action by plaintiff, there remains the additional element of proof to establish that plaintiff reasonably relied on such representation to her detriment. Georgia Home Ins. Co. v. Warten, 113 Ala. 479, 22 So. 288.

Appellant says that because of the statements in the application and in the receipt that there could be no insurance or obligation without issuance of a written policy, plaintiff was not misled by the representation of coverage during the consideration of the application.

█ It is fundamental to an action for fraud that the representee must have been deceived by and relied upon the representation as an inducement to his action or non-action. Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59. Whether the representee was deceived by, relied upon a false representation and was induced to injuriously change his position because of it, is generally a question of fact for the jury. Nelson v. Shelby Mfg. & Improv. Co., 96 Ala. 515, 11 So. 695. The particular circumstances of each case must determine whether one was deceived by and relied upon a false representation. Facts such as the relationship of the parties, their age, intelligence, experience, knowledge and means of knowledge, are some criteria which may be considered by a jury. It may be said that the general test of reasonableness in light of the whole situation may be applied. 37 Am.Jur.2nd, Fraud and Deceit, § 236. In this case, we find that such issue was properly for the jury.

█ Appellant submits that plaintiff failed to prove damages as a result of the misrepresentation. The proof of injury resulting from false representation is necessary to recovery. Smith v. Smith, 266 Ala. 118, 94 So.2d 863; Meeks v. Garner, 93 Ala. 17, 8 So. 378.

██ The damage or injury charged by plaintiff is that she and her husband were induced not to seek and secure other insurance. She alleged that such other insurance could have been obtained at a standard rate had they not relied upon appellant's representation that they were "covered." In proof of such allegation, plaintiff and her son-in-law gave their opinion that other insurance could have been obtained because her husband was in perfect health. Though such testimony of plaintiff was not objected to, it was insufficient to establish insurability of the husband at a standard rate. Such statement was only the opinion of the plaintiff. The opinion of a lay witness is insufficient as proof of the status of insurable health. Such opinion must come from an expert. Sovereign Camp, W. O. W. v. Hutchinson, 217 Ala. 71, 114 So. 684; Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837. Though the opinion of plaintiff was allowed to be expressed without objection, its insufficiency as proof was raised by request for the affirmative charge.

We further say that proof of good health alone is insufficient to prove insurability at a standard rate. It may be said to be common knowledge that factors other than good health are considered by insurors in determining insurability of an applicant. Such other factors as occupation, ancestry, prior diseases or injury of applicant, income and credit rating, hobbies and others may be considered, particularly in relation to premium rate and amount of coverage. In order to prove insurability at a standard rate, it must be shown that the applicant meets the general standards of the insurance industry. Simpson v. Prudential Insurance Co. of America, 227 Md. 393, 177 A.2d 417.

█ In this case the evidence was that plaintiff's husband was not an acceptable risk for life insurance at a standard rate by one company, Life & Casualty Ins. Co. of Tennessee, and was not so insurable by Wabash Life Ins. Company without further acceptable information, other than that furnished in the application.

**596**

It is our opinion therefore that there was a failure of proof of a material element of an action for fraud, that of damage. Because of such failure appellant was due to have been given the requested affirmative charge.

Other assignments of error have been considered and found not to be well taken. This cause is reversed and remanded.

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.