This is an appeal by Paul Carney Martin, plaintiff, from a directed verdict rendered in favor of the defendant, State Farm Mutual Automobile Insurance Company (Company). We reverse and remand.
On April 24, 1980, the Company issued a standard automobile insurance policy to plaintiff on a 1979 model Mercury automobile. The policy period as described therein was April 24, 1980, to December 17, 1980, and the premium for that period was specified as $394.14. A portion of this premium, $53.82, was paid by allowing plaintiff a credit from a previous policy, leaving a balance due of $340.32. A "BALANCE DUE NOTICE" stating that amount due was mailed to plaintiff on May 5, 1980, showing the due date of the balance to be June 17, 1980, and reciting: "Payment of the Balance Due by Due Date continues this policy to Dec-17-80."
Apparently, because plaintiff was allowed a two-car discount, which entitled *Page 63 
him to a class change with a reduced premium of $280.16 semi-annually, the Company sent plaintiff another "BALANCE DUE NOTICE" showing a new balance of $303.13 due on June 22, 1980. This notice also stated that "[p]ayment of the Balance Due by Due Date continues this policy to Dec-17-80," and also advised plaintiff to "DISREGARD ANY PREVIOUS NOTICES YOU MAY HAVE RECEIVED ON THIS POLICY."
Plaintiff's policy was cancelled, but shortly thereafter plaintiff paid the Company $151.57, and he then received a "REINSTATEMENT NOTICE," sent on July 14, 1980. This notice recited the amount paid, $151.57, and the balance due, $153.56, and stated: "YOU MAY DISREGARD THE NOTICE OF CANCELLATION PREVIOUSLY SENT TO YOU. YOUR POLICY HAS BEEN CONTINUED WITH NO LAPSE IN COVERAGE." This was followed by a "BALANCE DUE NOTICE" sent by the Company to plaintiff which gave the balance of $153.56 due on August 16, 1980, based on the same semi-annual premium of $280.16 and the overall balance due of $303.13. This notice, however, contained the following statement: "50/50 PAYMENT PLAN. $2.00 SERVICE CHARGE DEDUCTED FROM PREVIOUS AMOUNT PAID." That notice also stated that payment of the balance due by the due date, August 16, 1980, continued the policy to December 17, 1980. It is undisputed that plaintiff failed to pay the balance due ($153.56) by August 16, 1980.
On September 11, 1980, plaintiff was involved in an automobile accident and subsequently was sued by the driver of the other vehicle. When that case came to trial, it was settled without trial by the parties, with no judgment being rendered for either party. The Company was notified of the accident but denied coverage and did not participate in plaintiff's defense or in the settlement.
This action was filed by plaintiff as an outgrowth of the Company's refusal to defend him or to pay what plaintiff became obligated to pay when he himself settled the lawsuit brought by the third party. Plaintiff's complaint in this case contained three counts.
In Count I, plaintiff claimed a breach of contract by the Company in failing to defend him or to pay "the resulting judgment" in accord with its policy.
In Count II, plaintiff claimed that the Company was guilty of fraudulent misrepresentation, as follows:
 "5. In, to-wit June, 1980, Defendant represented that the amount of monies necessary to pay his insurance premiums for insurance coverage between 6-17-80 and 12-17-80 was $303.13. In reliance thereon, Plaintiff paid on towit, July 15, 1980, the sum of $151.57, representing the premium for one half the coverage period (i.e. to 9-17-80), which premium was accepted by defendant, as it had been in the past, leaving a balance of $151.56, plus an apparent service charge for paying on the installment plan of $2.00, to complete the payment and pay the policy to 12-17-80."
Plaintiff then alleged the occurrence of the accident and his damage by the Company's refusal to pay "a judgment of which he is legally liable."
In Count III, plaintiff alleged that the Company was estopped to deny coverage as a consequence of its actions and misrepresentations.
The Company defended with a general denial.
The cause proceeded to a trial by jury. Following presentation of plaintiff's evidence, the company moved for a directed verdict. This motion was granted. Plaintiff's motion for a new trial was subsequently denied, and this appeal followed.
The issue presented is whether or not the trial court erred in directing a verdict for the Company at the close of the plaintiff's case.
It is axiomatic that when a directed verdict is requested the entire evidence must be viewed in a light favorable to the opponent, and, if any reasonable inference adverse to the moving party may be drawn, *Page 64 
the motion must be refused. City of Birmingham v. Wright,379 So.2d 1264 (Ala. 1980). It is only where the facts are such that reasonable men must draw the same conclusion from them that the question is considered as one of law for the court.Draughon v. General Finance Credit Corporation, 362 So.2d 880
(1978).
Central to the plaintiff's recovery was the requirement that he prove the existence of insurance covering his liability for the accident of September 11, 1980. That issue concerns whether the Company mailed a notice of cancellation to the plaintiff before his accident on September 11, 1980.
Martin states that the Company notified him in May 1980 that the new balance necessary to keep his insurance in force to December 17 was $303.13. Martin paid and the Company received $151.57 of that amount in July, and he insists that this partial payment amount paid his coverage to September 17, 1980. Thus, he argues that he was covered when the accident occurred on September 11, 1980. Martin further testified that in the past he had "split the premium" several times (a payment device offered as a convenience to him), and that he himself knew that each time he got a balance due notice that it showed a $2.00 service charge.
We disagree with plaintiff's theory. Payment of one-half of the total premium did not "buy" coverage for one-half of the premium period. In other words, under the Company's payment method an insured might not, unilaterally, convert asemi-annual payment schedule into a quarterly payment schedule at the semi-annual premium rate. Nor does it appear that the Company impliedly agree to this "conversion." The Company merely allowed Martin to split the semi-annual premium into two successive payments at a service charge of $2.00. The second installment was due on August 16, 1980, and it was not paid by that date. Clearly, the Company could have cancelled Martin's policy for his failure to pay the balance of the premium by the due date, which is consistent with the policy's renewal condition. That condition, subject to an exception not material here, bound the Company
 ". . . to renew the policy for the next policy period at the rates then in effect unless we mail to you written notice of our intention not to renew. The notice will be mailed to your last known address at least 30 days before the end of the current policy period. The mailing of it shall be sufficient proof of notice.
"These agreements to continue and renew are void:
"a. if you fail to pay the premium when due; . . ."
Nevertheless, this policy further bound the Company to give the insured written notice of cancellation:
 "How and When We May Cancel. We may cancel your
policy by written notice, mailed to your last known address. The notice shall give the date cancellation is effective. The mailing of it shall be sufficient proof of notice.
". . . .
 "After the policy has been in force for more than 59 days, any notice of cancellation will be mailed to you at least:
 "a. 10 days before the cancellation effective date if the cancellation is because you did not pay the premium.
". . . .
 ". . . If we cancel, premium will be earned on a pro-rata basis. Any unearned premium may be returned at the time we cancel or within a reasonable time thereafter. Delay in the return of unearned premium does not affect the cancellation."
Indeed, the Company had cancelled before, but reinstated the policy on July 14, 1980, after Martin had paid the $151.57 payment. The reinstatement notice instructed Martin to disregard the notice of cancellation previously sent to him.
On direction examination, Martin testified that he had not received any notice of cancellation:
"Q. Did you receive anything else, Paul?
"A. No, sir. Not after that. *Page 65 
 "Q. You know that they said that they sent you a cancellation notice, don't you?
"A. Yes, sir.
"Q. Did you receive the cancellation notice?
"A. No, sir.
 "Q. Did anybody that you know of receive a cancellation notice?
"A. Not to my knowledge.
 "Q. Did the people at the bank receive a cancellation notice?
 "A. I was informed that they hadn't. That's what I was informed.
"Q. That they what?
"A. Did not.
 "Q. You were told — they didn't come down and tell you that you've got to get your insurance up or anything, did they?
"A. No, sir."
Apparently, at some point, Martin was told by the Company that it had mailed him a cancellation notice which stated that his policy would be cancelled effective September 9, 1980. Although counsel for the Company makes reference to this notice on his cross-examination of Martin, it was never offered into evidence because a directed verdict was granted for the defendant at the close of plaintiff's case:
 "Q. . . . Now, had you ever received a cancellation notice before?
"A. Oh, yes.
 "Q. So, you knew what a cancellation notice looked like?
"A. Uh-huh.
 "Q. And you knew that if you didn't pay the premium it would be cancelled, didn't you?
"A. If I got one, yes.
 "Q. Well, you knew it would be cancelled if you didn't pay the premium whether you got a notice or not, didn't you. You knew that. You knew that from the past that if you don't pay the premiums you don't have insurance?
"A. That's right.
"Q. Now, that says it was due on the 16th.
"A. Yes, sir.
 "Q. This notice was sent out on the 21st. That's only five days after it was due, wasn't it?
"A. Uh-huh.
 "Q. They were letting you know quickly that you were past due and that if you didn't pay it that on 12:01 a.m. on September 9, 1980, you would have no insurance? But you say you didn't get this?
"A. That's right."
Since there was no proof of mailing of this notice in evidence at the close of plaintiff's case, an issue remained as to whether the Company had mailed this notice of cancellation. The plaintiff denied ever receiving such notice, and, based on his prior dealings with the Company, as well as the cancellation provision requiring written notice, he was justified in believing his insurance remained in effect after his payment of $151.57, until the company notified him otherwise.
Viewing the plaintiff's evidence most favorably to him, one may reasonably infer that the Company did not mail a cancellation notice to him. Martin claims to have relied on this failure to give notice, assuming his coverage was still in effect at the time of his accident on September 11, 1980.Absent proof of mailing, plaintiff's evidence proves a prima facie case of breach of contract, because of the policy provision requiring that the Company mail written notice of cancellation at least 10 days before the cancellation date. Further, plaintiff's evidence tends to prove a prima facie case of estoppel. The Company had on a previous occasion sent plaintiff notice of cancellation and afforded him the opportunity to reinstate his policy after it had been cancelled for failure to pay the premium by the due date. Because of that previous course of dealing, plaintiff's evidence tends to show that he relied to his detriment upon the absence of such notice.
Consequently, it was error for the trial court to grant a directed verdict at the close of plaintiff's evidence. For that reason, the judgment must be reversed and *Page 66 
the cause remanded for a new trial. It is so ordered.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON and SHORES, JJ., concur.