[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 299 
This is an appeal from a judgment entered after a jury verdict in favor of plaintiff McArthur Tarver against defendants Lawler Mobile Homes, Inc., and Kemper Lawler.
On or about August 22, 1983, Tarver and his family (including his common-law wife, Rita Allen), went to a mobile home lot owned and operated by Lawler Mobile Homes, Inc. (corporation). There they met a salesman, Wayne Wilkes, who was an employee of the corporation. Wilkes showed Tarver and his family around the lot, and soon thereafter they found a mobile home that they expressed an interest *Page 300 
in purchasing. After some discussion about the monthly payments and the down payment, Wilkes asked Tarver to leave a cash deposit while he submitted a credit application on Tarver. Tarver gave Wilkes $100.00 in cash and then signed a document entitled "A Plain Language Purchase Agreement." The document contained a description of the make and serial number of the mobile home to be purchased, the dimensions of the mobile home, the fact that it was a used home, and a notation of a $100.00 deposit. The document did not state the sales price, interest rate, or monthly payments.
Wilkes then signed the document. He signed where an officer of the corporation usually signed; however, Wilkes was not an officer of the corporation, nor was he ever given the express authority to sign on behalf of the corporation. The purchase agreement stated that it was "[n]ot valid unless signed and accepted by an Officer of the Company."
After Wilkes and Tarver signed the purchase agreement, Wilkes told Tarver that he would call him back when he received the result of Tarver's credit application. Tarver and his wife testified that three days later Wilkes called, informing them that Tarver's credit application had been approved (this is denied by Wilkes), and that they should bring Wilkes $700.00 more to complete the down payment. Tarver then brought Wilkes the additional $700.00, which Wilkes noted on the previously executed purchase agreement. Tarver claims that Wilkes also told Tarver that the purchase price of the mobile home was "about eighteen thousand dollars, and the monthly payment would be about two hundred" but that "he didn't know exactly till he got the financial paperwork on it." Wilkes then told Tarver to expect delivery of the home in approximately two weeks.
After two weeks had gone by, Tarver contacted Wilkes by phone. Wilkes informed him that there had been a small delay because certain paperwork concerning the mobile home had not come back yet. Wilkes again promised that the mobile home would be delivered and that Lawler Mobile Homes would bring it the next day. Tarver was instructed by Wilkes to wait at a certain location so that he (Tarver) could meet the delivery truck to show the crew where to put the mobile home. Tarver followed Wilkes's instructions ana waited all morning. When the mobile home did not arrive, Tarver called Wilkes and received the explanation that the truck had broken down, but was assured that the mobile home would be brought that afternoon. Again Tarver waited and, again, the mobile home was not delivered. This was the beginning of a series of excuses, delays, and deceptions that would last for a period of almost four months. The record shows that Tarver and his wife made numerous calls to Wilkes and made numerous trips to the mobile home lot in their efforts to obtain their mobile home. On numerous occasions, Tarver or his wife waited at a particular location, as instructed by Wilkes, for delivery of the mobile home. On each such occasion, Tarver would receive some excuse from Wilkes as to why the mobile home was not being delivered. Finally, it became obvious that the mobile home was not going to be delivered, and Tarver sought the assistance of counsel.
Tarver's attorney sent defendant Kemper Lawler, an officer, stockholder, and director of the corporation, a letter concerning this matter, and it is Lawler's contention that this was the first time he learned of Tarver's situation. Wilkes, on the other hand, testified on deposition (which was read to the jury, since Wilkes was incarcerated at the time of trial) that Lawler was aware of the situation, and that he had instructed Wilkes to keep putting Tarver off when Tarver would inquire about delivery of the mobile home, because Lawler was "`trying to get it handled'" and because "`we don't make nothing giving a man his money back.'" Tarver testified that he had not personally dealt with Lawler in regard to the purchase of the mobile home. Rather, all of his interactions were with Wilkes. Tarver testified that he discussed the matter with Lawler *Page 301 
only after his attorney had contacted Lawler.
Although the record is not entirely clear, it appears that at the time Lawler received the letter from Tarver's attorney, Lawler had investigated and discovered that Wilkes had taken deposits from other customers. Lawler and another employee testified that they had searched the corporation's receipt books and discovered that Wilkes had not written receipts for the money he had taken from these customers, as corporate policy required. Upon being confronted with this information, Wilkes wrote out a list of people from whom he had taken money and the amounts taken. The amounts totaled $8,510.00, and included in the list was Tarver's $800.00. Lawler fired Wilkes and turned this information over to the local law enforcement authorities. Wilkes was indicted on two counts of theft in the third degree, one of which was based on Lawler's property. Wilkes pleaded guilty to both charges, and was ordered to make restitution in the amount of $8,510.00, which included Tarver's $800.00. Wilkes denied taking Tarver's money and claimed that he pleaded guilty to avoid the possibility of a jury conviction — he said he was on probation at the time of this occurrence and was concerned about a possible habitual offender status.
The corporation eventually refunded $12,000.00 to $15,000.00 to customers who had given Wilkes their deposits.
In January of 1984, Tarver filed this action in circuit court. He named Lawler Mobile Homes, Inc., as a defendant, and by subsequent amendment he added Kemper Lawler. After several amendments, Tarver's complaint alleged breach of contract, including a claim for damages for mental anguish as a result of a breach of contract, misrepresentation, money had and received, and conspiracy. Prior to trial, the corporation and Lawler filed motions for summary judgment and for change of venue, which were denied.
The case was tried before a jury in Union Springs, Bullock County, Alabama. Lawler and the corporation moved for a directed verdict at the close of Tarver's evidence and at the close of all the evidence, challenging the sufficiency of the evidence as to each count asserted against each defendant. The trial judge denied these motions for directed verdict. The jury returned a verdict in the amount of $1,250,000.00 against both Lawler and the corporation. Lawler and the corporation thereupon moved for a new trial or, in the alternative, JNOV, and the trial court found the verdict rendered to be excessive by the amount of $994,000.00. The trial judge then conditionally granted the motion for new trial unless Tarver remitted all damages in excess of $256,000.00 and agreed to a reduction of the judgment to $256,000.00, in which event the motion for new trial would be denied. Tarver agreed to the reduction; the motion for new trial was denied.
On appeal, the issues are: (1) Whether the trial court erred in not granting the corporation's motion for change of venue; (2) whether the trial court erred in not granting Lawler's and the corporation's motion for summary judgment; (3) whether there was insufficient evidence to submit to the jury the issues of whether Lawler and the corporation were guilty of breach of contract, misrepresentation, and conspiracy; (4) whether there was insufficient evidence to submit to the jury the issue of damages for mental anguish under the breach of contract count; and (5) whether the trial court should have granted Lawler's and the corporation's motion for new trial or, in the alternative, JNOV on the ground that the verdict was the result of bias, passion, and prejudice.
At the outset, we agree with defendant Lawler that a directed verdict should have been entered in his favor on the contract count. There is not a scintilla of evidence that he was a party to the contract in issue. Tarver testified that the only person he ever had any dealings with concerning the purchase of the mobile home was Wilkes, the salesman. Therefore, it was error to submit the breach of contract count against Lawler to the jury. Since the jury rendered a general verdict *Page 302 
against Lawler (and the corporation), and we are unable to determine upon which count(s) the jury based its verdict, we reverse and remand for a new trial as to Lawler. The remainder of this opinion is devoted to the issues raised by the corporation, and for the reasons discussed herein, the judgment against the corporation is affirmed.
 I.
The corporation contends that the trial court abused its discretion in denying its motion for change of venue.
The denial of a motion for a change of venue in a civil action is not such a ruling of the trial court as may be reviewed by this Court on an appeal from a final judgment in the cause. NYTCO Services, Inc. v. Wilson, 351 So.2d 875 (Ala. 1977); Mathis v. Board of School Commissioners of MobileCounty, 289 Ala. 552, 268 So.2d 822 (1972). The proper method for obtaining review of a trial court's ruling on a motion for a change of venue is by a writ of mandamus. Ex parte TidwellIndustries, Inc., 480 So.2d 1201 (Ala. 1985); Mathis, supra;International Union, United Automobile, Aircraft and Agr.Implement Workers of America v. Palmer, 267 Ala. 683,104 So.2d 691 (1958). Therefore, we cannot review this contention here.
 II.
The corporation's second contention is that the trial court erred in denying its motion for summary judgment.
Rule 56 (e), A.R.Civ.P., provides in part:
 "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
Tarver did not file any affidavits or other testimony in opposition to the motion. As noted in the last sentence of Rule 56 (e), summary judgment can be entered against him only if "appropriate." This Court has said, considering the question of the appropriateness of summary judgment:
 "In determining whether a summary judgment is proper, the ultimate question is whether there remains a genuine issue of material fact, and if there is one, summary judgment is inappropriate, Rule 56 (e) ARCP; 6 Moore's Fed. Prac., par. 56.15 (2nd ed. 1971). Put in another way, `[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'"
First National Bank of Birmingham v. Culberson, 342 So.2d 347,351 (Ala. 1977). We have also held that the scintilla rule applies to motions for summary judgment. Summary judgment should not be granted if there is a scintilla of evidence supporting the position of the non-movant. Silk v. MerrillLynch, Pierce, Fenner Smith, Inc., 437 So.2d 112 (Ala. 1983).
The corporation's motion for summary judgment was based upon the pleadings and depositions on file with the trial court. Included were the depositions of Tarver, Rita Allen (his wife), and Wilkes. Having reviewed these depositions, we conclude that material issues of fact were presented for jury consideration. The evidentiary matter in support of the motion did not establish the absence of a genuine issue. First National Bankof Birmingham, supra.
First, contrary to the corporation's assertion that a contract was never created, we find that both Tarver's and his wife's depositions presented at least a scintilla of evidence that a contract to buy and to sell a mobile home was entered into. (The evidence in support of this finding is discussed under the issues concerning the directed verdict motion.) *Page 303 
Second, there was evidence in the depositions supporting Tarver's count for misrepresentation. The alleged misrepresentations were that Tarver would receive the mobile home within a reasonable time from the date of the contract, and that Tarver was promised and assured that financing had been obtained for the purchase price of the mobile home.
Tarver and Allen testified that when they decided to purchase the mobile home, Wilkes asked them to fill out a credit application, and that he told them that he would call them in several days to let them know if their credit had been approved. Allen testified that several days later she received a call from Wilkes, in which he said, "I called to let y'all know that you got your home." She also stated that he told her that "he needed the other money because he got the home financed." The record indicates that financing was never obtained.
After Tarver brought the additional money that Wilkes requested, he and Allen were told that they had to wait for some more paperwork. Allen testified that eventually the papers came, and that she and Tarver went to sign them. Wilkes then told them to expect delivery of the mobile home in several weeks. Allen and Tarver testified that they never received the mobile home. At one point, they noticed that the mobile home was gone from the corporation's lot. Tarver testified that Wilkes told him "that Mr. Lawler said what he could do was give us another mobile home instead of the mobile home because something had went [sic] wrong with that mobile home." Allen testified that Wilkes told her that the mobile home had been sold to someone else.
These depositions presented at least a scintilla of evidence supporting Tarver's count against the corporation for misrepresentation.
We also find a scintilla of evidence supporting the conspiracy count against the corporation. Wilkes testified in his deposition that Lawler instructed him to keep putting Tarver off. This is evidence of a conspiracy among Wilkes, Lawler, and the corporation to wrongfully deprive Tarver of his right to the mobile home. (The question of the corporation's liability based on a conspiracy theory is considered in the next section.)
 III.
The corporation's third contention is that there was insufficient evidence to submit to the jury the issues of whether it was guilty of (a) breach of contract, (b) misrepresentation, and (c) conspiracy; and, therefore, that its motion for directed verdict as to these counts should have been granted. We disagree.
Whether sufficient conflicting evidence exists to warrant consideration by a jury is determined by testing the evidence against the "scintilla rule," which requires that a question go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes the smallest trace, or a scintilla, in support of the theory of the complaint. Warren v.Ousley, 440 So.2d 1034 (Ala. 1983); Alabama Power Co. v.Taylor, 293 Ala. 484, 306 So.2d 236 (1975). When a motion for directed verdict is tested against the scintilla rule, the reviewing court must view all the evidence in the light most favorable to the nonmoving party. Martin v. State Farm MutualAutomobile Ins. Co., 456 So.2d 62 (Ala. 1984). Granting the motion is proper "only where there is a complete absence of proof on a material issue or where there were no controverted questions of fact on which reasonable people could differ."Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984).
We now turn to each count.
Breach of Contract
The corporation contends that there was no contract; therefore, it says, it could not be guilty of breach of contract.
The elements of a contract are agreement, consideration, two or more contracting parties, legal object, and capacity.Freeman v. First State Bank of Albertville, 401 So.2d 11 (Ala. 1981). *Page 304 
After reviewing the record before us, we find that there was evidence of a contract.
Tarver went to the corporation's lot in search of a mobile home. There he entered into discussions with the corporation's salesman, Wilkes. There was evidence that Wilkes agreed to sell and Tarver agreed to buy a particular mobile home. The condition that Wilkes had to first secure financing for Tarver was apparently met. Both Tarver and Allen testified that they had been assured several times that financing had been obtained for Tarver. The record indicates that the price and monthly payments had been discussed on at least two different occasions and that they were acceptable to Tarver. Tarver and Wilkes signed a document (purchase agreement) which contained a description of the mobile home and its serial number. Tarver gave $800.00 as down payment for the mobile home, and this was noted on the document. There was no contention that anyone lacked the necessary mental capacity to contract. This evidence justified submitting to the jury the issue of whether a contract was formed and, if so, whether it had been breached.
The corporation argues, however, that the purchase agreement could not have been a contract for the following reasons: (1) The document stated that it contained the entire understanding of the parties, but it obviously did not, since it omitted the price and monthly payment terms; (2) the document stated that in order for it to be valid, it had to be signed by a company officer, and Wilkes was not such an officer; and (3) Wilkes was without authority to enter into such a contract on behalf of the corporation.
We first note that a contract may consist of several communications between the parties, some in writing and some oral, each constituting a link in the chain which comprises the entire contract. Air Conditioning Engineers, Inc. v. Small,259 Ala. 171, 65 So.2d 698 (1953). The purchase agreement was not the only evidence of the contract. Subsequent discussions and interactions between Tarver and Wilkes were properly considered and, taken as a whole, were sufficient evidence of a contract to buy and sell a mobile home.
The second and third arguments contesting the existence of a contract are also without merit.
The object of a signature is to show mutuality and assent, which may be shown in other ways, and unless a contract is required by statute to be in writing, it need not be signed, provided it is accepted and acted upon. Paterson Edey LumberCo. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245
(1927); Bell v. Washington, 373 So.2d 865 (Ala.Civ.App. 1979). Whether the contract was accepted and acted upon was a question of fact for the jury to decide. Bell, supra.
With regard to Wilkes's authority (or lack thereof) to contract on behalf of the corporation, we turn to well recognized principles of agency.
An agent's authority to contract on behalf of his principal must be either expressed, implied, or apparent. Patterson v.Page Aircraft Maintenance, Inc., 51 Ala. App. 122, 283 So.2d 433
(Ala.Civ.App.), cert. denied, 291 Ala. 777, 283 So.2d 437
(1973). See also 2A C.J.S. Agency § 146 (1972). There is no contention by Tarver that Wilkes had express authority as an agent of the corporation to contract on its behalf; therefore, such authority must be either apparent or implied.
Apparent authority of an agent arises from the acts of the principal, either by omission or commission, and such authority is implied where the principal passively permits the agent to have the authority to act on his behalf. Treadwell Ford, Inc.v. Courtesy Auto Brokers, Inc., 426 So.2d 859 (Ala.Civ.App. 1983).
Wilkes was the sole employee regularly stationed on the lot of the corporation in Phenix City. His job was presumably to show and sell mobile homes for the corporation. The existence and the scope of a principal-agent relationship is normally a question of fact to be determined by the *Page 305 
jury. Cooper Co. v. Bryant, 440 So.2d 1016 (Ala. 1983). This case is no exception.
Furthermore, as previously mentioned, there was also evidence before the jury that Lawler, an agent acting on behalf of the corporation, was aware of Wilkes's dealings with Tarver and, in fact, encouraged Wilkes on the transaction in question. A party, by his actions and acceptance of the benefits of a contract and by operating under that contract, may ratify and confirm it, even though his actual signature is not affixed.Rush v. Atomic Electric Co., 384 So.2d 1067 (Ala. 1980).
This evidence of Lawler's knowledge and involvement came from Wilkes's deposition, which was read to the jury. Although we are skeptical about Wilkes's credibility, it is not the province or the duty of the appellate court to say what witness is telling the truth or is to be believed. Rather, such a matter is within the exclusive province of the jury. William E.Harden, Inc. v. Harden, 29 Ala. App. 411, 197 So. 94 (1940). Therefore, there was evidence that the corporation, through the actions of its agent, Lawler, ratified the contract entered into by Wilkes, even if Wilkes originally lacked the authority to enter into such a contract. We find no error in the trial judge's denying the corporation's motion for directed verdict on the breach of contract count.
Misrepresentation
Ala. Code 1975, § 6-5-101, provides that "[m]isrepresentations of a material fact made willfully to deceive . . . and acted on by the opposite party . . . constitute fraud." It is not contested that Tarver suffered from some fraudulent activity by Wilkes. Rather, the corporation argues that it is not liable for such fraud because Wilkes, its employee, was acting solely on personal motives at the time of the commission of the fraud and was, therefore, acting outside the scope of his employment.
A corporation or employer will be liable for the torts of its employee committed while acting in the line and scope of his employment even though the corporation or employer did not authorize or ratify such acts and even if it expressly forbade them. Old Southern Life Ins. Co. v. McConnell, 52 Ala. App. 589,296 So.2d 183 (Ala.Civ.App. 1974). If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer. Plaisance v. Yelder, 408 So.2d 136
(Ala.Civ.App. 1981); United States Steel Co. v. Butler,260 Ala. 190, 69 So.2d 685 (1953).
Wilkes, a salesman of mobile homes for the corporation, was at the corporation's place of business selling a mobile home to Tarver at the time the initial misrepresentations were made. At all times pertinent to the facts of this case, he was operating as a salesman for the corporation. There was also evidence of other fraudulent (criminal) acts by Wilkes, which indicated that he was motivated by personal considerations bearing no relation to the corporation's business. The conflicting inferences arising from the testimony considered as a whole presented a question for the jury — whether Wilkes was acting within the scope of his employment so as to make the corporation liable for the fraud. Plaisance, supra.
Furthermore, even if the fraud was initially beyond the scope of the agent's authority, the employer will be liable where the fraud is ratified. Shelton v. Duncan, 385 So.2d 1329
(Ala.Civ.App. 1980). As previously mentioned, there was evidence from which the jury could conclude that Lawler, an agent for the corporation, ratified the fraud when, according to Wilkes, he instructed Wilkes to keep putting Tarver off.
Conspiracy
The substantive tort of conspiracy consists of the following elements: *Page 306 
 "the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means."
Snyder v. Faget, 295 Ala. 197, 201, 326 So.2d 113, 116 (1976), quoting Barber v. Stephenson, 260 Ala. 151, 155, 69 So.2d 251,254 (1953).
As we have stated, there was evidence that there was a combination of at least three persons, Wilkes, Lawler, and the corporation, to continue to deceive Tarver into thinking that his mobile home would soon be delivered. Such deceit would be unlawful, oppressive, and immoral.
Furthermore, we have recognized that a corporation may be liable for damage to a third person resulting from a conspiracy where two or more of its agents participated in the conspiracy. See American Pioneer Life Ins. Co. v. Sandlin, 470 So.2d 657
(Ala. 1985). We find no error with the submission to the jury of the conspiracy count against the corporation.
 IV.
The corporation contends that there was insufficient evidence to submit to the jury the issue of damages for mental anguish under the breach of contract count.
In Alabama, the general rule is that mental anguish is not a recoverable element of damages arising from a breach of contract. B M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala. 1979); Sanford v. Western Life Ins. Co., 368 So.2d 260 (Ala. 1979). This Court, however, has traditionally recognized certain exceptions to this rule. Where the subject matter of the contract is so closely associated with matters of mental concern, or with the emotions of the party to whom the duty is owed, that a breach of that duty can reasonably be expected to result in mental anguish or suffering, damages to compensate for this may be awarded. B M Homes, Inc., supra; Hill v.Sereneck, 355 So.2d 1129 (Ala.Civ.App. 1978); Southern Ry. Co.v. Rowe, 198 Ala. 353, 73 So. 634 (1915).
Damages for mental anguish, inconvenience, and annoyance resulting from a contract relating to the construction of a home were allowed in both Hill v. Sereneck, supra, and B MHomes, Inc., supra.
In the case at bar, Tarver testified that prior to his contact with Lawler Mobile Homes, Inc., he and his wife and five children had lived in a mobile home, but lost it as a result of a fire. They were forced to move in with Tarver's cousin until they could obtain substitute housing. Tarver testified that he immediately looked for a new mobile home and found one at Lawler Mobile Homes, Inc. He testified that for approximately four months he tried to obtain possession of the mobile home. He and his wife made numerous calls and trips to the corporation's place of business in their repeated attempts to get their mobile home. Tarver testified that he missed work while waiting on numerous occasions for delivery of the mobile home, and that his and his wife's frustration increased with the repeated excuses and continuous disappointments. Tarver testified that he became the subject of joking and derision among his friends as they saw him waiting on numerous occasions for the delivery of the mobile home.
This evidence supported submission to the jury of the claim for damages for mental anguish under the breach of contract count. The evidence, if believed, supports the fact that it was reasonably foreseeable by the corporation that the withholding of Tarver's family home, particularly the manner in which it was withheld, would cause severe mental anguish, inconvenience, and annoyance. Thus, this case is indistinguishable on this issue from B M Homes, Inc., supra. See also, Alabama PowerCo. v. Harmon, 483 So.2d 386 (Ala. 1986).
 V.
The final question we address is whether the trial court should have granted *Page 307 
the corporation's motion for new trial or, in the alternative, JNOV on the ground that the verdict was the result of bias, passion, and prejudice. The corporation argues that the speed in which the jury returned its verdict, less than fifteen minutes, and the fact that it was in the exact amount sued for, $1,250,000.00, shows that the verdict was the result of bias, prejudice, and passion.
In Crum v. McGhee, 289 Ala. 244, 266 So.2d 855, 860 (1972), we held that "[t]he mere fact alone, without more, that the jury returned a verdict in the exact amount sued for is not, of itself, evidence of prejudice, passion, partiality or corruption so as to authorize our finding that the verdict is excessive."
Furthermore, where the trial court has ordered a remittitur and refused to grant a new trial, as in the case at bar, there is a favorable presumption as to the correctness of the amount of the judgment in the sum finally awarded. Holcombe v.Whitaker, 294 Ala. 430, 318 So.2d 289 (1975); Central ofGeorgia Ry. Co. v. Steed, 287 Ala. 64, 69, 248 So.2d 110, 114
(1971).
 "`And whether this court should further reduce the verdict or set the verdict aside involves a review of trial court's judgment based upon his observation of all the witnesses who testified in the case and other incidents of the trial which cannot be reflected in the transcript and which are not available for observation by us.'"
Central of Georgia Ry. Co., supra (quoting Airheart v. Green,267 Ala. 689, 104 So.2d 687 (1958)).
We have carefully studied the entire record, and, being mindful of the presumption of correctness of the trial judge's order of remittitur and denial of new trial, we decline to order a further reduction or to order a new trial as to the corporation.
For the reasons assigned, we reverse and remand for a new trial as to defendant Lawler. As to the corporation, we affirm the judgment of the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, JONES, BEATTY and ADAMS, JJ., concur.