ROBERTSON, Presiding Judge.
At various times during the period between March and May 1996, Felicia Reynolds, Treva Clifton, Wilma Latham, Darryl Chapman Jr., Felicia Brown, Eric Studa-mire, and Sonya Peake (“the customers”) visited Crown Pontiac, Inc. (“Crown”), an automobile dealership in Birmingham, Alabama. Each of the customers was referred to Charles Fountain, a Crown salesperson, for assistance. Knowing that each had a poor credit history, Fountain told each of the customers (1) that he could help them finance the purchase of an automobile; (2) that Crown had a special program to handle customers with credit problems; (3) that a payment of $500 would be necessary to process their credit applications; and (4) that the payment would be applied as a down payment towards the purchase of an automobile. Each of the customers paid Fountain between $300 and $500 and Fountain gave *524 each of them a “receipt” in the form of his Crown business card bearing a handwritten endorsement that he had received the money. Fountain’s taking of money directly from the customers violated a Crown policy that salespersons were not to receive payments directly from customers; Crown required that all payments be made through its finance office and that that office issue a formal receipt for such payments.
After not hearing from Fountain and Crown for several weeks, Reynolds and Clifton contacted Joe Zegarelli, one of Crown’s sales managers, on June 3, 1996, and informed him about Fountain's conduct. That same day, Fountain telephoned Reynolds and Clifton and told them that he had been directed to “straighten things out.” Reynolds again contacted Zegarelli on June 9 and requested a refund of her money, and Fountain again called Reynolds and told her that he had been directed to try to “work things out.” Of the customers who paid Fountain $500, only Studamire and Peake purchased automobiles from Crown, although Latham was eventually told that her credit application had been approved.
On July 5, 1996, a Crown customer showed Zegarelli a business card “receipt” that Fountain had prepared after receiving a payment from the customer. Zegarelli notified Robert Roper, Crown’s general manager, of Fountain’s conduct, and the two managers telephoned Fountain and confronted him with their findings; Fountain then confessed that he had taken the customers’ $500 payments and had used them to pay for medical treatment for his wife. Roper also reported Fountain to the police department of the City of Hoover. Crown terminated Fountain’s employment on July 9, 1996, and refunded $500 to each of the customers except for Chapman (who was reimbursed by Fountain directly) and Clifton (who presented Crown a “receipt” for only $200).
The customers sued Crown, alleging (1) that Fountain had defrauded them and had breached oral contracts with them, and that Crown was vicariously liable for Fountain’s conduct; (2) that Crown had acted negligently or wantonly toward them; and (3) that Crown had negligently hired and/or trained Fountain. The claims of Studamire and Peake were dismissed because of their non-compliance with a binding arbitration clause in their Crown purchase contracts, and the remaining customers will be referred to hereinafter simply as “the plaintiffs.”
Crown filed a motion for a summary judgment on all of the plaintiffs’ claims, contending that it was not vicariously liable for Fountain’s conduct. The plaintiffs filed a response in opposition. After a hearing, the trial court entered a summary judgment in favor of Crown on all claims.
The plaintiffs appealed to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
The sole issue raised by the plaintiffs is whether the trial court erred in entering the summary judgment on their fraud claim against Crown. In support of their contention, the plaintiffs assert (1) that Fountain’s conduct was within the line and scope of his employment with Crown; and (2) that Crown had ratified Fountain’s conduct because of the delay between their initial notification to Zegarelli on June 3, 1996, and Fountain’s termination on July 8, 1996. We review the propriety of the summary judgment under the following standard:
“A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. *525 R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required.”
Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc., 671 So.2d 674, 675 (Ala.Civ.App.1995) (citations omitted). Moreover, we view the evidence in a light most favorable to the nonmovant, without presuming that the summary judgment is correct. See Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993); Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
Under Alabama law:
“A corporation or employer will be liable for the torts of its employee committed while acting in the line and scope of his employment even though the corporation or employer did not authorize or ratify such acts and even if it expressly forbade them. Old Southern Life Ins. Co. v. McConnell, 52 Ala.App. 589, 296 So.2d 183 (Ala.Civ.App.1974). If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer. Plaisance v. Yelder, 408 So.2d 136 (Ala.Civ.App.1981); United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685 (1953).”
Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305 (Ala.1986). Moreover, where fraud is committed within the actual or apparent scope of employment, the employer is liable even where the fraud is to the employee’s own benefit and to the employer’s detriment. Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537, 541 (Ala.1989), aff'd, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); see also Southern Life & Health Ins. Co. v. Turner, 571 So.2d 1015, 1017-18 (Ala.1990) (noting that theory of respondeat superior extends to cases where fraud benefits only the agent), vacated on other grounds, 500 U.S. 901, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991).
In Lawler Mobile Homes, a mobile home salesperson (Wilkes) asked a prospective mobile home purchaser (Tarver) to leave a cash deposit with him while he submitted a credit application on Tarver’s behalf. In exchange for a $100 payment from Tarver, Wilkes gave Tarver a document describing the make and serial number of a used mobile home and indicating that the $100 had been received. Wilkes later telephoned Tarver, informed him that his credit application had been approved, directed him to remit $700 in additional funds, and told him that he could expect delivery of a mobile home within approximately two weeks. However, a four-month “series of excuses, delays, and deceptions” from Wilkes ensued, during which time Tarver received neither a refund of his money nor a mobile home. Finally, after receiving a letter from Tar-ver’s attorney, Wilkes’s corporate employer terminated his employment after discovering that he had taken a total of $8,510 from numerous customers; the employer also refunded between $12,000 and $15,000 to those customers.
Tarver sued Wilkes and his employer; a judgment of $256,000 was entered in favor of Tarver against the defendants. Wilkes’s employer appealed to the Alabama Supreme Court, contending, among other things, that there was insufficient evidence to submit Tarver’s misrepresentation claim against the employer to the jury. The employer argued that Wilkes had acted outside the scope of his employment because, it alleged, his conduct was based “solely on personal motives.” However, in affirming the judgment against the corporation that had employed Wilkes, the Alabama Supreme Court rejected that argument:
*526 “Wilkes, a salesman of mobile homes for the corporation, was at the corporation’s place of business selling a mobile home to Tarver at the time the initial misrepresentations were made. At all times pertinent to the facts of this case, he was operating as a salesman for the corporation. There was also evidence of other fraudulent (criminal) acts by Wilkes, which indicated that he was motivated by personal considerations bearing no relation to the corporation’s business. The conflicting inferences arising from the testimony considered as a whole presented a question for the jury — whether Wilkes was acting within the scope of his employment so as to make the corporation liable for the fraud.”
492 So.2d at 305.
Viewed in a light most favorable to the plaintiffs, the facts of this case closely parallel those of Lawler Mobile Homes. Fountain,' a salesperson for Crown, told the plaintiffs that Crown had a program that would help them obtain financing for a car and that deposits of $500 would be required to process their credit applications. He made these statements while at Crown’s place of business during negotiations regarding the purchase of automobiles from Crown, and gave each of the plaintiffs a “receipt” in the form of his Crown business card. Moreover, as in Lawler Mobile Homes, the salesperson kept the customers’ deposits for his own use. The sole difference between the facts of Lawler Mobile Homes and this case appears to be that the plaintiffs in this case, unlike Tarver, were specifically told that their $500 payments would be necessary for Crown to approve their credit applications.
Of course, Fountain’s statements may have, as Crown contends, benefitted either Fountain himself or his wife rather than Crown. However, the evidence before the trial court concerning the circumstances surrounding Fountain’s alleged representations to the plaintiffs would support a finding by the trier of fact that he had made those representations while discharging duties assigned to him by Crown, and that Crown is therefore liable to the plaintiffs. Lawler Mobile Homes, 492 So.2d at 305. Therefore, the trial court erred in entering the summary judgment in favor of Crown as to the plaintiffs’ fraud claim.[1]
Based upon the foregoing facts and authorities, we reverse the summary judgment in favor of Crown as to the plaintiffs’ fraud claim, and we remand the cause for further proceedings. Because the plaintiffs do not contend on appeal that the summary judgment was erroneous as to any of their other claims, the judgment is affirmed as to those claims. See Thompson v. United Cos. Lending Corp., 699 So.2d 169, 171 (Ala.Civ.App.1997) (citing Leisure Am. Resorts, Inc. v. Knutilla, 547 So.2d 424, 425 n. 2 (Ala.1989)); see also Rule 28(a)(5), Ala.R.App.P.
REVERSED AND REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.

. We do not reach the plaintiffs’ alternative argument that the conversations that Zegarel-li had with Reynolds and Clifton on June 3, 1996, and with Reynolds on June 9, 1996, placed Crown on notice concerning Fountain’s conduct, and that its subsequent failure to terminate Fountain’s employment and to reimburse the plaintiffs’ deposits until July 9, 1996, would support a finding that Crown "ratified” Fountain’s conduct. See Lawler Mobile Homes, 492 So.2d at 305 (noting that ratification of an employee’s fraud will render an employer liable, and concluding that directions to the employee "to keep putting [a defrauded customer] off” would support a jury finding of ratification).