770 So.2d 589 (1999)
USA PETROLEUM CORPORATION
v.
Harold HINES.
1980028.
Supreme Court of Alabama.
December 17, 1999.
Rehearing Denied May 12, 2000.
*590 Richard E. Broughton and George R. Parker of Ball, Ball, Matthews & Novak, P.A., Montgomery, for appellant.
Sam E. Loftin of Loftin, Herndon, Loftin & Miller, Phenix City, for appellee.
COOK, Justice.
The plaintiff, Harold Hines, sued James U. Davis and USA Petroleum Corporation, claiming damages based on injuries he had suffered as a result of an assault and battery committed upon him at a gasoline station operated by the corporate defendant in Phenix City. The defendant Davis was an employee of the corporate defendant. The case was tried before a jury. At the close of the evidence, the plaintiff moved to dismiss the defendant Davis and all claims against USA Petroleum except the claim seeking to impose on that defendant vicarious liability for the assault and battery. The court granted the plaintiffs motion. The jury returned a verdict for the plaintiff, awarding him $200,000 in compensatory damages and $200,000 in punitive damages. The court entered a judgment on that verdict. USA Petroleum filed a "Motion for Judgment as a Matter of Law/Motion for New Trial/Motion for Remittitur," which the court denied. USA Petroleum appeals; we affirm.
The facts of the case are set out in the trial judge's "Order on the Defendant's Post-Trial Motions," issued pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986):
"This case arises out of an assault and battery committed by an employee of USA Petroleum in October of 1996. Mr. Hines, the Plaintiff, had gone to the USA gas station to complain about the way Mr. Davis, USA's employee, had talked to his wife earlier in the day. Mr. Davis, an assistant manager at USA, and the only employee on duty when Mr. Hines arrived at the store, pushed Mr. Hines toward his car and began screaming and cursing at Mr. Hines. Mr. Davis then told Mr. Hines that he was going to call the police. Mr. Hines moved his car to the side of the USA gas station cashier's booth to await the arrival of the police. Davis then began beating on Mr. Hines' vehicle, first using his fists and then a broom handle. When Mr. Hines got out of the vehicle to inspect the damage, Davis injured Mr. Hines by shoving him back into his car.
". . . .
"As a result of the battery committed to his person, Mr. Hines was forced to seek treatment with a doctor, both at the emergency room and later under the care of Dr. Harakas. Dr. Harakas treated Mr. Hines for several months, and eventually was forced to perform surgery on Mr. Hines' shoulder. The medical bills incurred by Mr. Hines were quite substantial.
"Additionally, Mr. Hines testified that his injuries caused him pain and suffering. The evidence also showed that Mr. Hines was frightened and scared during this incident.
"Mr. Hines also presented substantial evidence of lost wages. Before the battery occurred, Mr. Hines was earning approximately $48,000 as an auto mechanic. After the battery and resulting surgery, Mr. Hines was forced to take early retirement three years before his 65th birthday, when he had planned to retire. Mr. Hines lost approximately $48,000 for each of the three years of *591 employment that he missed as a result of the Defendant's action...."
USA Petroleum first argues that it is not liable to Hines, because, it argues, its employee Davis injured Hines while acting outside the line and scope of his employment. The trial judge concluded that the jury heard substantial evidence from which it could find that Davis was acting within the line and scope of his employment when he committed the assault and battery. He stated in his Order on the Defendant's Post-Trial Motions:
"Viewing the evidence in a light most favorable to the Plaintiff, which the court is required to do, there was substantial evidence from which the jury could find that USA's employee, Davis, was acting within the line and scope of his employment when the assault and battery was committed. In addition, there was evidence from USA's employee, Davis, that he was following company policy at the time of the assault and battery."
This Court has written:
"A corporation or employer will be liable for the torts of its employee committed while acting in the line and scope of his employment even though the corporation or employer did not authorize or ratify such acts and even if it expressly forbade them. Old Southern Life Ins. Co. v. McConnell, 52 Ala.App. 589, 296 So.2d 183 (Ala.Civ.App.1974). If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer. Plaisance v. Yelder, 408 So.2d 136 (Ala.Civ. App.1981); United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685 (1953)."
Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305 (Ala.1986). The jury heard substantial evidence from which it could conclude that Davis was acting within the line and scope of his employment when he assaulted Hines.
USA Petroleum next contends that the court should have dismissed all claims against it after it had dismissed the claims against Davis. At the close of all the evidence, Hines moved to dismiss his claims against the employee, Davis, and all claims against USA Petroleum except one, and to present to the jury only that one remaining claimhis vicarious-liability claim against the employer. This Court has sanctioned this tactic. See Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993), wherein Justice Houston observed:
"Vaughn was a defendant in this case.... At the close of all the evidence, the trial court directed a verdict on the assault and battery count in favor of Big B. The plaintiff, in an astute legal maneuver, then dismissed Vaughn as a defendant. When this case was submitted to the jury, Big B was the only defendant."
Id. at 1005.
USA Petroleum relies on Barlow v. Liberty National Life Insurance Co., 708 So.2d 168 (Ala.Civ.App.1997), a tort action against a principal and its agent. In Barlow the agent was held to be entitled to a directed verdict; thus, the principal was entitled to have the verdict against the principal set aside. The Barlow case presents a fact situation completely different from the one before us, because the agent in this case, Davis, was not held to be entitled to a directed verdict. Also, in Barlow the employee was dismissed "with prejudice." Id. at 173. In the case before us, the court's order dismissing the claims against Davis is silent as to whether the dismissal was with prejudice; thus, we must presume that the dismissal was without prejudice and that it would have no res judicata effect. Hope Developers, Inc. v. Vandiver, 582 So.2d 1073, 1074 (Ala.1991); *592 McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930 (11th Cir.1987).
USA Petroleum argues that the record contains no evidence to support a punitive-damages award against it, and, further, that if the evidence did support a punitive award, the award of $200,000 was excessive. The trial judge spoke to these issues in his Order on the Defendant's Post-Trial Motions:
"The first issue to be determined is whether USA can be assessed punitive damages based on the conduct of its employee. Under § 6-11-27, [Ala.Code 1975], as amended, an employer can be held liable for the malicious conduct of the employee if the employer knew or should have known of the unfitness of the employee, or used the employee's services without proper instruction and with a disregard for the rights and safety of others. Mr. Davis, the assistant manager, was the sole employee at the USA gas station when the incident occurred. According to Davis, he had been told by his prior supervisor that it was his duty to `repel intruders' who tried to enter the cashier's booth. Davis testified he felt justified in using the force that he did against Mr. Hines and was acting according to USA policy in doing so. The policy that Mr. Davis testified about reflected a disregard by USA of the rights and safety of others. Additionally, even if USA did not have such a policy (a contention of USA at trial, but which the jury apparently did not find credible), the fact that Davis believed this to be the policy shows a failure to properly instruct him by USA.
"There was also evidence presented that USA knew or should have known of Davis' unfitness for employment. Prior to this incident, Davis had been fired by USA because he had been arrested for a sex offense while on the job. On his termination report, USA marked that Davis was ineligible for rehire. Nevertheless, Davis was eventually rehired by USA and rose to the position of assistant manager. Furthermore, Davis had been reprimanded by his supervisor at USA when he gave an unwelcome hug to a female customer.
"Davis also had a history of violence at the workplace. He had been fired from two prior jobs for pushing a co-employee into a ladder and for spraying another co-employee with hot water. Davis testified that he told his supervisor at USA about these incidents when filling out his application for employment.
"Davis also had a history of mental illness. Davis testified that while he was in high school he had received treatment from a psychiatrist for violent outbursts which occurred at school. Davis testified that his supervisor at USA was aware of this condition.
"An employer can also be assessed punitive damages for the actions of an employee if those actions are designed to benefit the employer. Given the evidence presented at trial concerning USA's policy toward customers entering or threatening to enter the booth, the jury could conclude that Mr. Davis' battery on Mr. Hines was calculated to benefit the employer.
"Viewing this evidence in the light most favorable to the Plaintiff, a jury could find by clear and convincing evidence that USA could be assessed punitive damages based on the actions of Davis [see § 6-11-27, Ala.Code 1975].
"The Court also examined the amount of the punitive-damages award, pursuant to [Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989)], § 6-11-23(b)[, Ala.Code 1975,] as amended, and the United States Supreme Court case of BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and its progeny. Comparing these factors to the evidence presented in this case, the Court can find no reason to disturb the *593 amount of punitive damages awarded by the jury.
"The culpability and degree of reprehensibility of the Defendant's conduct [do] not warrant a remittitur. Defendant USA hired Davis even though they knew he had been terminated from two previous jobs due to physical confrontations with co-employees. John Ramsey, the store manager and Davis' immediate supervisor, knew about Davis' prior history of mental illness and the problems that he had with his temper. Additionally, the very day of the incident, Davis told Ramsey that he was under quite a lost of stress, and needed some time off. Ramsey testified that he recognized that Davis was having trouble with his nerves that day and that Davis was like a `pressure keg' the day of the incident. In spite of all of these warning signs, USA placed Mr. Davis by himself and without supervision at the USA gas station on October 6, 1996. There was evidence from which the jury could find that USA knew or should have known of the dangerous propensity of Davis and the likelihood that he might injure a customer or a fellow employee. By placing a person such as Davis in contact with the public in a stressful environment, USA put their customers at risk of serious physical harm. For Mr. Hines, that risk became a reality. The reprehensibility and culpability of the Defendant's conduct supports the punitive-damages award, and does not warrant remittitur.
"The financial consideration and the impact of the award upon the Defendant does not warrant a reduction of the punitive-damages award. USA is a nationwide chain of gas stations. USA presented no evidence that a $200,000 award of punitive damages would harm it financially. Thus, remittitur is not called for based on this factor.
"The $200,000 punitive-damages award bears a reasonable relationship to the harm that is likely to occur from the Defendant's conduct as well as to the harm that actually occurred. The court finds that the actual and likely harm cause by the Defendant's conduct is grievous. Due to the action of USA, through its employee, James Davis, Mr. Hines was forced to undergo surgery to his left rotator cuff. The damage done to his rotator cuff made him unable to continue his job as an auto mechanic, a position which he had held for thirty-five years. Mr. Hines was forced to take early retirement three years before his 65th birthday, which cost him $48,000 in income for each of those years. This actual harm is consistent with the likely harm that could result from the Defendant's conduct. Placing in unsupervised contact with customers an employee who had on numerous occasions exhibited a tendency for violence against others could certainly result in a serious injury to a customer. The $200,000 award, therefore, bears a reasonable relationship to the harm that is likely to occur and the harm that actually occurred.
"The removal of USA's profit is irrelevant to this case, and therefore does not support a remittitur.
"The desirability of discouraging other retailers from similar conduct strongly supports the $200,000 punitive-damages award. Other retailers must be discouraged from placing employees such as Davis, alone and unsupervised, in direct contact with the public. The Court certainly hopes that a $200,000 punitive-damages award will have a deterring effect upon other retailers. Accordingly, a remittitur is not required based on this factor.
"The cost of litigation has been considered by the Court in assessing the amount of punitive damages awarded. The Court finds that the costs in time and expenses associated with the prosecution of this case by the Plaintiff [were] substantial. Numerous depositions and exhibits were prepared and used at trial. *594 The Plaintiff also had to provide expert medical testimony, which the Court understands can result in significant expense. This factor does not warrant a reduction of the punitive-damages award.
"Under Green Oil Co., supra, a defendant is entitled to a mitigation of a punitive-damages award if criminal sanctions have been imposed. No criminal sanctions have been imposed against any party in this case. Likewise, no other civil actions have been brought against the Defendant for the same conduct. Thus, this factor does not mitigate the punitive-damages award.
"Having already considered the degree of reprehensibility of the Defendant's conduct, the first factor outlined by the Supreme Court in BMW of North America, Inc. v. Gore, supra, the Court will next consider the ratio of compensatory to punitive damages awarded in this case. It is well settled that our courts do not apply a strict mathematical ratio when comparing the amount of [the] punitive-damages award to [the amount of the] compensatory award. In this case, the jury awarded $200,000 in compensatory damages in addition to the $200,000 punitive-damages award. This one-toone ratio of compensatory to punitive damages is certainly reasonable under the facts of this case, and does not cause the court to `raise a suspicious judicial eyebrow.' Remittitur is therefore not justified on this basis.
"The Court also considered the comparable civil or criminal penalties that could be imposed for this conduct. The Court notes that it has considerable experience in dealing with criminal cases. Under Alabama law, a person commits the crime of assault in the second degree, if, with an intent to cause serious physical injury to another person, he or she causes serious physical injury to that person. The evidence presented at trial certainly supports the position that USA's employee committed an assault in the second degree, a Class C felony. The range of punishment ranges from one year and one day to not more than ten years' imprisonment and a $5,000 fine. (§ 13A-5-11; § 13A-5-6, Code of Alabama 1975, as amended). Given the grievous nature of the conduct at issue in this case, this Court would probably impose a severe sentence if this were a criminal case. The court notes that there are no criminal penalties applicable to a corporation such as USA Petroleum for assault and battery. Thus, the Court cannot say that a $200,000 award of punitive damages is due to be remitted under this factor.
"There are no factors which weigh in favor of reducing the punitive-damages award. In fact, the evidence presented at trial supports the [conclusion] that a large substantial punitive damage verdict is justified. The court is aware of other cases where punitive damages have been awarded in personal injury cases, and the $200,000 award in this case is not disproportionate to those other verdicts.
"The Court also finds that little, if any, effort was made by the Defendant to remedy the wrong. USA never contacted or apologized to Mr. Hines for the actions of their employee. Although Mr. Hines had been a customer of USA for years, USA never in any way expressed to Mr. Hines their regret about the incident, not before, during or after the trial of this lawsuit. USA's total failure to take responsibility for Mr. Hines' injury [suggests a remittitur would not be appropriate.]
"This Court has had ample time to reflect upon the evidence, arguments of counsel, and the conduct, demeanor, attitude, and testimony of the parties and witnesses at all stages of the trial. The opinion of the Court is that the verdict is not excessive and was not the result of bias, passion, prejudice, or improper motive. The Court finds that the verdict is correct, considering the culpability of *595 the Defendant's conduct, the desirability of discouraging the Defendant and others from similar conduct, and the impact upon the parties...."
Thus, the trial judge reviewed the jury verdict, using not only the three guide-posts set out by the United States Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), but also applying the factors set out by this Court in BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997); Green Oil Co. v. Hornsby, 539 So.2d 218, 223-24 (Ala.1989); and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). We have carefully studied the record and the trial judge's well-reasoned and thorough analysis of the punitive-damages award. We agree with his conclusion that the award is not excessive.
USA Petroleum contends that it is entitled to a new trial, because, it argues, the trial court erroneously sustained Hines's objection to the admission of Defendant's Exhibit 6, a photograph showing Hines using his right arm and shoulder to carry a grocery bag. USA Petroleum contends that the photograph was relevant and was admissible for impeachment purposes. The record reflects that before the trial the judge entered a "Scheduling/Pre-Trial Order" that provided in pertinent part:
"8. The parties are Ordered to exchange copies of all exhibits to be offered into evidence or used for impeachment at Trial by no later than March 9, 1998. Except for good cause shown, each exhibit shall be premarked for identification. Exhibits not exchanged will not be admitted at Trial. Objections to the exchanged exhibits shall be made in writing by no later than March 13, 1998. Exhibits not objected [to] will be admitted."
Under Rule 16, Ala. R. Civ. P., such an order controls the subsequent course of the action. The parties are bound by the pretrial order; the photograph USA Petroleum sought to introduce had not been furnished to the plaintiff in accordance with the pretrial order. Thus, the trial judge did not abuse his discretion in refusing to allow it into evidence. Rule 16, Ala. R. Civ. P.; Electrolux Motor AB v. Chancellor, 486 So.2d 414, (Ala.1986); Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987).
USA Petroleum argues that the trial court erred to reversal in refusing to give jury charges on the doctrines of contributory negligence and assumption of the risk. USA Petroleum argues that after the first confrontation with Davis, the plaintiff knew that Davis was angry and that Davis had threatened him with physical harm, and, therefore, that the plaintiffs failure to leave the scene constituted contributory negligence or assumption of the risk. Assault and battery are intentional torts; contributory negligence and assumption of the risk are not defenses to intentional torts. USA Petroleum injected the question of negligence into the case by requesting certain jury charges; in doing so, it invited error. It is well established that a party may not avail himself of error into which he has led the court. Phillips v. Anesthesia Services, P.C., 565 So.2d 127, 129 (Ala.1990), citing Osborn v. Johns, 468 So.2d 102, 110 (Ala.1985), in turn citing Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 157, 130 So.2d 178, 182 (1961). The trial judge did not abuse his discretion in refusing to charge the jury as to these defenses.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., dissents.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent. I do not believe USA Petroleum Corporation should be held vicariously liable for the acts of its employee, James Davis. Mr. Hines, the plaintiff, did not present substantial evidence indicating that Davis was *596 acting within the line and scope of his employment when he assaulted Hines.
The trial court stated in its "Order on Defendant's Post-Trial Motions" that the jury had heard evidence indicating that Davis was following company policy when he committed the assault and battery. I disagree. Davis indicated that he had been told by his supervisor at USA Petroleum that he should "repel intruders" who try to enter the cashier's booth. Hines went to USA Petroleum's gasoline station to complain about the way Davis had talked to Hines's wife earlier in the day. Hines's wife had been at the station earlier that day, and on that earlier visit she had driven her automobile through the station in the wrong direction. The station was a "one-way" service station, set up so that drivers proceed through in one direction, pump their gasoline, and then stop by the booth to pay the attendant. Davis told Hines's wife that she could not pump gasoline with her car facing in the wrong direction and that the police could give her a ticket.
Hines did not go to the station to purchase gasoline. He went there to confront Davis about the way Davis had spoken to his wife. Davis became angry and lost his temper after Hines provoked him. He first pushed Hines toward his automobile and said he was going to telephone the police. It is possible that this action could be construed as "repelling intruders," which would have been within the line and scope of Davis's employment. However, when Hines got back into his car and pulled it over to the side of the booth, Davis began beating on the car with his fists and with a broom handle. Hines sustained injuries to a shoulder when he got out of the car and Davis shoved him back into the car. Given this further action, I cannot agree that the evidence could support a verdict finding that Davis was "repelling intruders" from the cashier's booth, as USA Petroleum's company policy required.
The majority indicates that there was substantial evidence from which the jury could conclude that Davis was acting within the line and scope of his employment, but it does not indicate what that evidence was. In determining that the punitive award against USA Petroleum was warranted, the trial court stated: "There was also evidence presented that USA knew or should have known of Davis' unfitness for employment." See 770 So.2d at 592. However, the evidence referred to should not even be considered until it is determined that Davis was in fact acting within the line and scope of his employment. Evidence indicating that Davis had been fired from two jobs for misconduct, that he had been arrested (and exonerated) on charges of sexual misconduct, and that he had received psychiatric treatment for a violent outburst while he was in high school has no bearing on whether USA Petroleum should be held vicariously liable. This evidence would be relevant if Hines were claiming negligent or wanton hiring, training, or supervision. Hines had made such claims, but he voluntarily dismissed them before the case was submitted to the jury. I do not believe the jury had before it substantial evidence indicating that Davis committed the assault on Hines while acting within the line and scope of his employment; therefore, I conclude that USA Petroleum should not be held vicariously liable.