This appeal involves the liability of Wal-Mart Stores, Inc., for an assault and battery committed by one of its employees upon Lynne M. Meyer, a customer of Wal-Mart. A jury found in favor of Wal-Mart, and the trial court entered judgment based on that verdict. Meyer appeals. We affirm.
The legal issues presented on this appeal are: (1) whether the trial court erred in refusing to enter a judgment as a matter of law for the plaintiff; and (2) whether the trial judge improperly instructed the jury on the applicable law and improperly refused to give certain jury instructions requested by the plaintiff. *Page 834 
 Facts
On December 17, 1998, Lynne M. Meyer entered a discount store operated by Wal-Mart Stores, Inc., located on East South Boulevard in Montgomery, at approximately 7:30 a.m. The evidence tends to show that Meyer was in a hurry to get to a business meeting and that she stopped by the Wal-Mart store to purchase panty hose. After getting the panty hose, she proceeded to the check-out registers to pay for the items. She noticed lines at each open register, and she requested that the store open another register. The store complied, sending Valerie Watts to open a new register. Watts brought her cash drawer to the unopened register, as Meyer waited in line. Meyer told Watts that she was in a hurry, and she asked her to please work faster. Evidence was presented indicating that instead of working faster, Watts slowed her pace.
After opening the register, Watts began to ring up Meyer's items. Meyer complained that the computer had indicated the wrong price of an item, and Watts called another Wal-Mart employee to get a "price check" on the items. This apparently took some time. Meyer became agitated as she waited for the price check. There was testimony that she walked up to Watts and hit her in the chest with an open fist, although Meyer disputes that she ever struck Watts.[1] What occurred next, however, is undisputed. Watts grabbed Meyer by her hair and proceeded to hit her repeatedly in the back of her head and Meyer screamed for help. Wal-Mart management personnel separated the two women and questioned them about the incident. Following the questioning, Watts was immediately fired for violating company policy forbidding fighting in the store or on store property. Meyer subsequently filed this action against Wal-Mart, but did not name Watts as a defendant.
 I.
Meyer first argues that she was entitled to a judgment as a matter of law. She maintains, in her brief to this Court, that "because the evidence was undisputed at trial that she was beaten by one of Wal-Mart's employees inside its store while the employee was working on the job that she was entitled to a judgment as a matter of law on liability." (Appellant's brief at p. 17.) Meyer cites Plaisance v. Yelder,408 So.2d 136 (Ala.Civ.App. 1981), to support her argument. In that case, Plaisance sued Yelder, a ready-mix concrete driver, alleging assault and battery for injuries Plaisance had allegedly suffered in a fight that followed a collision between Plaisance's automobile and the truck Yelder was driving. In Plaisance, the trial court directed a verdict for Yelder's employer, Montgomery Ready Mix, and Plaisance appealed. The Court of Civil Appeals held:
 "In order to recover against a defendant under the doctrine of respondeat superior, the plaintiff must establish the status of master and servant and that the act done was within the line and scope of the servant's employment. Naber v. McCrory Sumwalt Construction Company, 393 So.2d 973 (Ala. 1981). This rule applies even where the wrong complained of was intentionally, willfully, or maliciously done in such a manner as to authorize a recovery for punitive damages. Anderson v. Tadlock, 27 Ala. App. 513, 175 So. 412 (1937). In extending the liability to a willful wrong, the motive behind the act does not defeat liability, Seaboard Air Line Railway Company v. Glenn, 213 Ala. 284, 104 So. 548 *Page 835 
(1925), unless it can be shown that the servant acted from wholly personal motives having no relation to the business of the master. United States Steel Company v. Butler, 260 Ala. 190, 69 So.2d 685 (1953). Whether the servant was actuated solely by personal motives or by the interests of his employer is a question for the jury. B.F. Goodrich Tire Company v. Lyster, 328 F.2d 411
(5th Cir. 1964); Craft v. Koonce, 237 Ala. 552, 187 So. 730 (1939). This is so if there is any evidence having a tendency either directly or by reasonable inference to show that the wrong was committed while the servant was executing the duties assigned to him. United States Steel Company v. Butler, supra; Lerner Shops of Alabama v. Riddle, 231 Ala. 270, 164 So. 385 (1935)."
408 So.2d at 137. Meyer also cites the following cases in support of her argument: USA Petroleum Corp. v. Hines, 770 So.2d 589 (Ala. 2000); Naberv. McCrory Sumwalt Constr. Co., 393 So.2d 973 (Ala. 1981) (trial court entered summary judgment in favor of the employer; Alabama Supreme Court held that a jury question was presented as to whether defendant's employee, whose assigned task was to move fixtures under the plaintiff's supervision, was acting in the line of his assigned duties when he struck the plaintiff during a dispute over the manner of moving the fixtures);Whitely v. Food Giant, Inc., 693 So.2d 502 (Ala.Civ.App. 1997) (owner of a grocery store could be held liable for an assault and battery committed by its employee); Coastal Bail Bonds, Inc. v. Cope, 697 So.2d 48
(Ala.Civ.App. 1996) (plaintiff presented sufficient evidence that bail bond company's employees, while acting within the line and scope of their employment, had assaulted the plaintiff); and Austin v. Ryan's FamilySteakhouses, 668 So.2d 806 (Ala.Civ.App. 1995) (assault of an employee arose out of and in the course of employment for purposes of the worker's compensation law; thus, the employee was barred under the exclusivity provisions of the Workers' Compensation Act from bringing a tort action against the employer). We are not convinced that those cases support Meyer's argument that she was entitled to a judgment as a matter of law. At most, it appears that those cases stand for the proposition that whether an employer can be held liable for the tortious acts of an employee presents a jury question. In USA Petroleum Corp., supra, for example, a customer at a gasoline station sued the station operator and its employee, alleging that the employee had committed an assault and battery on him. The case was tried before a jury. On appeal, this Court, quoting Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305 (Ala. 1986), stated:
 "`If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer.'"
770 So.2d at 591. In the present case, the trial judge allowed the case to go to a jury. It specifically instructed the jury that when an employee is engaged to perform certain services, what the employee does to that end is deemed to be an act within the line and scope of the employee's employment. It further instructed the jury that a principal was not liable to others for the wrongful acts of its agent where, for personal reasons of the agent, the agent had abandoned the principal's business.
Based on the foregoing, and applying the standard of review set out inBurns v. Marshall, 767 So.2d 347 (Ala. 2000), for a *Page 836 
motion for a judgment as a matter of law, we conclude that Meyer was not entitled to a judgment as a matter of law. She was, however, entitled to have a jury determine whether Watts, as Wal-Mart's agent, was acting within the line and scope of her employment at the time of the assault and battery. Meyer presented her evidence to a jury, and the jury returned a verdict in favor of Wal-Mart.
 II.
Meyer's second issue relates to jury instructions. Specifically, Meyer argues that the trial court erred in instructing the jury that an employer is not legally responsible for the criminal acts of a third party, given the fact that the criminal act in this case was committed by the employee and that the trial court erred in refusing to give Meyer's requested jury instructions.
For a better understanding of this issue, we set out the trial court's entire instruction relating to an employer's liability for the criminal acts of a third party, as well as the objection by plaintiff's counsel and a summary of the trial court's response to the objection. The trial court orally instructed the jury, as follows:
 "Now, with regard to this particular case, an assault can be both a civil wrong and a criminal wrong. And this is a civil lawsuit that alleges that a tort, an assault and battery, was committed by the defendant against the plaintiff. And a tort is a civil wrong committed by one person or entity against another. And there are really three basic elements of every claim for a tort.
". . . .
 "Now, many of the facts are in dispute, but some of them are really not. For example, it's undisputed that [Meyer] was a customer of Wal-Mart, or that an altercation occurred. But some of the matters, which are in dispute and which will be for you to decide, is whether or not the employee was acting within the line and scope of her employment at the time of the altercation, and whether or not her employee — employer, Wal-Mart, should be held liable for those acts.
 "Now, as I said, [Meyer], as you know, was a customer of Wal-Mart, and would be considered an invitee. And a store owner, such as Wal-Mart, owes a duty to an invitee to be reasonably sure that it is not inviting another into danger and to exercise ordinary care to render and keep the premises reasonably safe.
 "Now, an assault and battery is defined as any touching by one person of the person or clothes of another in rudeness or in anger or in a hostile manner and that is what constitutes an assault and battery. An intent to injure is not an essential element. Again, the plaintiff has the burden of reasonably satisfying you by the evidence that an assault and battery was committed by her.
 "Now, [Meyer] alleges that the cashier, who was an employee of Wal-Mart, committed the assault and battery upon her while acting within the line and scope of her employment. When an employee is engaged to perform certain services, whatever she — he or she does to that end or in furtherance of the employment is deemed to be an act done within the scope of the employment.
 "Now, an employee [sic] or principal cannot be held liable for the criminal acts of a third person unless it knew or had reason to know that a criminal act was about to occur on its premises. But an employer or principal can be held liable for accidents, agent, or employee [sic] who is acting within the line and scope of his or her employment. When *Page 837 
an agent or — again, is employed to — is engaged to perform certain services, what he does to that end or she does is deemed to be an act within the line and scope of employment. But a principal is not liable to others for the wrongful acts of its agent where there is an abandonment of the principal's business for personal reasons of the agent. The agency in that case is suspended during the time of the abandonment of the principal's business. And a principal cannot be held responsible for the act of its agents, which have been committed beyond the scope of the agent's authority. But a principal is responsible for the acts of its agents done within the scope of their employment and within the line of duties even though such acts are contrary to the principal's expressed instruction.
 "Furthermore, the motive behind the act of the employee does not defeat liability of the principal, even if the wrong is willful, unless it can be shown that the servant acted from solely personal motives having no relation to the business of the employer. And whether or not the employee was actuated solely by personal motives or by the interest of the employee is also an issue for you to decide."
(R. 218-21.) (Emphasis added.) After the close of the trial court's instruction to the jury, Meyer's counsel made the following specific objection to the trial court's instruction:
 "The Court: What says the Plaintiff? And I know you have some — I think everybody is out. I don't know whether you have any objections that aren't already on the record.
 "Mr. Gill: Your Honor, I do have several objections. Number one, we objected to the trial court instructing the jury that the employer is not responsible for the criminal act [of a] third party. That is a jury charge that only applies in an action against a person or entity when there is a real third party involved in a criminal act. This is not a third party attack case. Rather, this is a line and scope of employment case involving Wal-Mart's employee. I was completely surprised by that jury charge —
". . . .
 "Mr. Gill: You know, we maintain it's not a third-party liability situation to sustain that jury charge. The problem is that now, based on the charge, it has injected the issue of notice on the part of the plaintiff to show that they either knew — she either knew that the employee was unfit or the employer — excuse me — the employer knew the employee was unfit or that the employer knew that there was going to be an attack, and that's not the law and that's not the plaintiff's burden of proof in this case, and we would ask the jury — the Court to instruct the jury — and I quote, `For the employer to be liable for the intentional acts of its employee committed in the line and scope of their employment, it is not necessary that the plaintiff prove that the employer knew that its employee was unfit or that the employer had notice that its employee was going to commit an intentional wrong.'"
(R. 228-31.) After a colloquy between Meyer's counsel and the court, the court said that it thought that the instruction was proper and that it had adequately instructed the jury on the applicable law.
The law governing our review in this case is as follows:
 "When a trial court's oral charge is a correct statement of the law, there is no reversible error. Rule 51, [Ala.] R. Civ. P.; see McLemore v. Alabama Power Co., 289 Ala. 643, 270 So.2d 657 (1972). We further note that in our review of *Page 838 
alleged error, where the objected portion of an oral charge is misleading, abstract or incomplete, reversible error will be determined only from a review of the entire instruction. Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975)."
Griggs v. Finley, 565 So.2d 154, 160 (Ala. 1990).
Meyer is correct in arguing that this is not a case in which the criminal act was committed against her by a third party; therefore, the trial court erred in instructing the jury on third-party liability for a criminal act. However, based on our review of the entire instruction given by the court and upon similar cases involving third-party criminal liability, we believe that the error was harmless.[2]
Alabama law clearly states the following:
 "`For [an employer] to become liable for [the] intentional torts of its agent, the plaintiff must offer evidence that [1] the agent's wrongful acts were in the line and scope of his employment; or [2] that the acts were in furtherance of the business of [the employer]; or [3] that [the employer] participated in, authorized, or ratified the wrongful acts.' Joyner v. AAA Cooper Transportation, 477 So.2d 364, 365
(Ala. 1985)."
Potts v. BEK Constr. Co., 604 So.2d 398, 400 (Ala. 1992).
This Court recently addressed a claim against an employer for damages resulting from torts allegedly committed by an employee. In Ex parteSouth Baldwin Regional Medical Center, 785 So.2d 368 (Ala. 2000), D.P. and S.P., individually and on behalf of E.P., their six-year-old daughter, sued South Baldwin Regional Medical Center and Ron McFadden, a registered nurse employed at the hospital, for damage allegedly suffered when McFadden sexually molested E.P. The trial court entered a summary judgment for the hospital on all of E.P.'s claims (alleging assault and battery, negligent supervision, and breach of duty to a business invitee) and entered a partial summary judgment for McFadden on the parents' individual claims alleging negligent infliction of emotional distress. The Court of Civil Appeals, in a plurality opinion, reversed the summary judgment on E.P.'s claims and remanded the case for further proceedings. See E.P. v. McFadden, 785 So.2d 364 (Ala.Civ.App. 2000). On certiorari review, this Court stated:
 "We granted the hospital's petition for certiorari review to consider whether the holding of the Court of Civil Appeals conflicts with this Court's recent decision in Carroll v. Shoney's, Inc., 775 So.2d 753
(Ala. 2000). We conclude that it does; therefore, we reverse the judgment of the Court of Civil Appeals insofar as it relates to E.P.'s claims.
 "The sole issue presented to this Court is whether the Court of Civil Appeals erred in reversing the summary judgment for the hospital on E.P.'s claims of assault and battery, negligent supervision, and breach of duty to a business invitee.
 "Judge Thompson correctly noted in his special writing that `this case presents extremely emotional issues,' *Page 839 
785 So.2d at 368. However, as both Judge Thompson and Judge Crawley recognized, the law in Alabama, as most recently restated in Carroll v. Shoney's, supra, is well established. Judge Crawley, in his special writing, summarized the pertinent law and the relevant facts, as follows:
 "`I would affirm the summary judgment in all respects; therefore, I must respectfully dissent from that portion of the opinion reversing the summary judgment for the hospital on E.P.'s claims of assault and battery, negligent supervision, and breach of duty to a business invitee. I agree that McFadden's personnel file documents a history of problems at work; however, almost all of these problems involved disagreements with coworkers. McFadden's file also indicates that he is a competent nurse dedicated to superior patient care. Days before the molestation incident, McFadden did have a disagreement with an elderly patient. Allegedly, McFadden told her that she would get her medicine "when he saw fit." When McFadden learned that the patient reported the incident, he allegedly returned to her room and threatened her. During the hospital's investigation of that incident, McFadden allegedly molested the child in this case.
 "`The opinion concludes that McFadden's "history" made his alleged sexual molestation of E.P. foreseeable and, therefore, that the hospital can be held liable for his actions. I disagree. According to our supreme court, to impose liability on the hospital E.P. would have to establish (1) that the "particular criminal conduct [was] foreseeable;" (2) that "the defendant . . . possessed `specialized knowledge' of the criminal activity;" and (3) that "the criminal conduct [was] a probability." Carroll v. Shoney's, Inc., 775 So.2d 753 (Ala. 2000) (emphasis added). In any case in which a defendant faces liability for the criminal actions of a third party, the focus is on whether the criminal activity was foreseeable. Notably, the supreme court has held that the particular criminal activity, not just any criminal activity, must be foreseeable. Carroll, 775 So.2d at 756; see also Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1373 n. 1 (Ala. 1986) (stating that evidence that one murder and one robbery of a guest in a hotel room in the 18 months preceding the homicide of Ms. Moye "would be insufficient as a matter of law to give rise to a duty to protect Ms. Moye"), and Henley v. Pizitz Realty Co., 456 So.2d 272, 273, 277 (Ala. 1984) (holding that prior criminal acts on the premises, including "one battery upon the owner of a car; six breakings and enterings of cars; two robberies; . . . six thefts; and one theft in which the thief was shot by a customer," were not sufficient to make the rape of Henley foreseeable).
 "`Nothing in McFadden's history indicated that he would molest a child. Therefore, I conclude that the molestation of E.P. was not foreseeable. I would affirm the summary judgment for the hospital in its entirety.'
"785 So.2d at 367-68.
 "We agree with Judge Crawley and Judge Thompson that the Court of Civil Appeals should have affirmed the summary judgment for the hospital, on the authority of Carroll v. Shoney's, supra, and the cases cited therein. See Ala. Code 1975, § 12-3-16 (`The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings *Page 840 
of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by Constitutional Amendment No. 328.'). The main opinion of the Court of Civil Appeals does not cite Carroll v. Shoney's. In fact, it cites no case dealing with the substantive law applicable to the merits of E.P.'s claims against the hospital."
Ex parte South Baldwin Reg'l Med. Ctr., 785 So.2d 368, 369-71 (Ala. 2000) (emphasis supplied). This Court said that the record in that case "clearly indicate[d] that McFadden had a history of mental illness (manic depression) and that he had functioned for years as a nurse because of the hospital's willingness to allow him to work while he was receiving treatment." 785 So.2d at 371. The Court also noted that the evidence indicated that although McFadden generally did a good job, he had "a history of emotional outbursts with fellow employees and with at least one patient," but that "[n]o evidence indicates that McFadden had ever engaged in sexual misconduct before the incident made the basis of this action." 785 So.2d at 371.
The Court concluded its opinion by asking and answering a question:
 "Did hospital administrators exercise sound judgment in allowing McFadden to work at the hospital in direct contact with patients? The answer to that question is debatable. However, the evidence, even viewed in the light most favorable to E.P., as our standard of review requires us to view it, falls woefully short of demonstrating that McFadden's supervisors should have foreseen that he would probably sexually molest a child in the hospital's care. See Ex parte McRae's of Alabama, Inc., 703 So.2d 351, 352 (Ala. 1997), wherein this Court, after citing numerous cases, stated: `The plaintiffs' evidence falls far short of the high standard a plaintiff must meet to hold a defendant liable for the criminal acts of a third party.'
 "We also note that this case does not fall within the rule stated in Young v. Huntsville Hospital, 595 So.2d 1386 (Ala. 1992), wherein this Court held that a special relationship had been created that imposed a unique duty on the defendant hospital because the hospital had anesthetized the plaintiff and placed her in a situation that we later described as making her `uniquely dependent upon the hospital for protection.' Saccuzzo v. Krystal Co., 646 So.2d 595, 597 (Ala. 1994). The evidence in this present case indicates that the incident giving rise to E.P.'s claims occurred in one of the hospital's patient-care rooms and in the presence of E.P.'s two brothers, her mother and father, and a housekeeper. The record gives no indication that at the time of this incident E.P. was `uniquely dependent upon the hospital for protection,' as was the helpless patient in Young. See also Baptist Mem'l Hosp. v. Gosa, 686 So.2d 1147
(Ala. 1996)."
785 So.2d at 371. We have quoted extensively from Ex parte South BaldwinRegional Medical Center, to show how this Court has applied principles of law relating to criminal acts committed by third parties in a case in which a plaintiff attempts to hold an employer liable for a criminal act committed by one of its employees, as is the case here.
Meyer also argues that the trial court erred in refusing to give certain jury instructions she requested. Based on the same legal reasoning set out above, we hold that the trial court did not err in refusing to instruct the jury as requested by the plaintiff. As we have pointed out, the trial court's oral instruction was sufficient *Page 841 
to cover the issues presented to the jury by the pleadings.
 Conclusion
Based on the foregoing and upon a reading of the trial court's instruction on the question of Wal-Mart's liability for the assault and battery committed by one of its employees, we hold that any error the trial court may have made in instructing the jury regarding criminal acts by third parties was, at most, harmless. The jury verdict for Wal-Mart is consistent with a finding by the jury that Wal-Mart's employee was not acting within the line and scope of her employment when she committed the assault and battery on Meyer, but rather was acting "from solely personal motives having no relation to the business of the employer." The trial court specifically instructed the jury that the question "whether or not the employee was actuated solely by personal motives" was for the jury to decide. Furthermore, the evidence showed that Wal-Mart had a policy forbidding fighting on store property and that Wal-Mart did nothing to ratify Watts's wrongful acts. Wal-Mart, in fact, fired Watts shortly after the altercation. Consequently, the judgment of the trial court is due to be affirmed.
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e) Ala. Code 1975.
AFFIRMED.
Moore, C.J., and See, Brown, Harwood, and Stuart, JJ., concur.
[1] There was also testimony that Watts, in her deposition, had testified that Meyer may have been just trying to retrieve the panty hose when she struck Watts.
[2] Rule 45, Ala. R. App.P. provides:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."